UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAYMOND GOMEZ, | No. CV 08-3155-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendants. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 14, 2008, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 29, 2008, and September 29, 2008. The parties filed a Joint Stipulation on January 29, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 29, 1957. [Administrative Record ("AR") at 61, 78, 404.] He has a high school education [AR at 76, 404], and has past relevant work experience as, among other things, a plumber, warehouse worker, and a forklift driver. [AR at 71-73, 406-11.]

On December 9, 2005, plaintiff filed his application for Disability Insurance Benefits, and on January 30, 2005, plaintiff protectively filed his application for Supplemental Security Income payments. [AR at 17, 61-66, 78-80.] In both applications, plaintiff alleged that he has been unable to work since October 27, 2004, due to open heart surgery, heart valve replacement, and shoulder, arm and hand pain. [AR at 61-66, 71, 78-80, 106.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 17, 46-60.] A hearing was held on August 22, 2007, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 401-29.] A vocational expert also testified. [AR at 423-28.] On September 26, 2007, the ALJ determined that plaintiff was not disabled. [AR at 14-26.] Plaintiff requested review of the hearing decision. [AR at 12.] When the Appeals Council denied plaintiff's request for review on April 14, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1] [AR at 19.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: diabetes mellitus 2; hypertension; obesity; status post aortic valve replacement; increased S2 (heart); chest pain, not of cardiac origin; low back pain; and bilateral shoulder osteoarthritis. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 19-20.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work.[3] [AR at 20.] Specifically, the ALJ determined that plaintiff "is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk for about six hours in an eight-hour workday, with occasional postural limitations," and "is able to occasionally reach above shoulder level bilaterally." [AR at 20.] At step four, the ALJ concluded that plaintiff was not capable

---

[1] The ALJ also determined that plaintiff "met the insured status requirements of the Social Security Act through March 31, 2005." [AR at 19.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

of performing his past relevant work. [AR at 24.] At step five, the ALJ found, based on the vocational expert's testimony, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 24.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 25.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly analyze the medical records; and (2) properly evaluate plaintiff's subjective symptoms and credibility. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A.  MEDICAL RECORDS/DEVELOPMENT OF RECORD**

Plaintiff contends that the ALJ "did not properly analyze the medical record including fully developing the record." Joint Stip. at 3. Specifically, plaintiff argues that the ALJ "failed in his obligation to fully develop the record because he did not use the service of a medical expert to interpret medical evidence." Id.

The ALJ has an affirmative duty to fully and fairly develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, only "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The responsibility

to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

Plaintiff's contention that the ALJ's failure to use a medical expert violated his duty to fully develop the record lacks merit. The case cited by plaintiff in the Joint Stipulation in support of this contention merely stands for the general proposition that "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). Smolen did not hold that the failure to use a medical expert to interpret medical evidence constituted a violation of the ALJ's duty to fully and fairly develop the record. Rather, the ALJ's obligation to develop the record arises only where the ALJ finds the record insufficient to properly evaluate the evidence. Here, the ALJ discussed all of the pertinent evidence in the record [AR at 20-24], and did not find the record either inadequate or ambiguous to allow for proper evaluation of the evidence. Indeed, the ALJ indicated that there was no conflict in the medical evidence concerning plaintiff's ability to perform light work. [AR at 22.] The ALJ found that "[t]he record contains no opinions of [plaintiff's] residual functional capacity from treating physicians," and that the consultative and nonexamining State Agency physicians found plaintiff was capable of at least light work. [AR at 21-24.] These findings are supported by the record. It does not appear that any treating physician completed an RFC assessment of plaintiff, or limited him to more restricted activities in their treatment notes.[4] [AR at 124-40, 154-206, 218-28, 247-396.] Further, the consultative and nonexamining State Agency physicians found that, at a minimum, plaintiff was able to perform light work. [AR at 141-52, 207-12, 229-34, 238-46.]

Neither does plaintiff point to any inadequacy or ambiguity in the record. Plaintiff's quoted assertion that the ALJ incorrectly stated that there is "*no evidence of radiculopathy or neuropathy . . .*" (Joint Stip. at 3 (emphasis in original)), appears to be inaccurate. The Court finds no such

---

[4] Despite a restriction from heavy lifting and an anticipated three month disability period placed on plaintiff by his treating physician on February 27, 2005, after his aortic valve replacement surgery [AR at 355], no other physician in the record restricted plaintiff from work activities. Indeed, in a treatment note dated April 25, 2005, plaintiff was encouraged to increase physical activity and was found to be capable of returning to work. [AR at 157.]

1  statement in the ALJ's decision. Contrary to plaintiff's assertion, the ALJ in the decision
2  specifically considered plaintiff's neuropathy, and concluded that there was no evidence that it is
3  disabling. The ALJ noted the August 13, 2007, EMG/NCS test of plaintiff's right upper extremity
4  performed by Dr. Hsien C. Young, which showed "decreased SNAP and CMAP amplitudes,
5  prolonged latencies, and increased late responses in all the nerves tested likely indicating an
6  underlying chronic peripheral sensorimotor neuropathy, such as due to diabetes or other causes
7  (metabolic, toxic, vitamin deficiency)." [AR at 395-96.] The ALJ further noted plaintiff's counsel's
8  argument at the hearing that plaintiff "has a chronic neuropathy in [his] hands." [AR at 428.]
9  However, the ALJ found that the EMG/NCS test contained no specific findings involving the hands.
10 [AR at 23, 395-96.] In addition, the ALJ found that a right hand series showed only a simple bone
11 cyst in the middle phalanx of plaintiff's third finger, but was otherwise unremarkable. [AR at 23,
12 278.] The ALJ concluded that "[t]his condition is apparently not disabling, as subsequent treating
13 notes do not specifically address a condition of the right hand or fingers." [AR at 23, 278.]
14 Moreover, plaintiff's contention that the ALJ's statement that plaintiff's "diabetes is controlled with
15 medication and laboratory tests" demonstrates his lack of expertise in evaluating medical records
16 fails. Joint Stip. at 8. [AR at 23.] The ALJ's statement in this regard is supported by the record.
17 On May 19, 2005, nonexamining State Agency physician Dr. Norman J. Rubaum completed a
18 Physical Residual Functional Capacity Assessment in which he noted that plaintiff's diabetes
19 mellitus "is controlled with oral medication," and that plaintiff shows "no evidence of end organ
20 damage from this disease." [AR at 145.] On February 20, 2006, the consultative internal medicine
21 examiner noted that plaintiff "reports a history of diabetes" and "is currently on oral medication,"
22 with symptoms of frequent urination, but no thirstiness, numbness or tingling of his feet. [AR at
23 229.] The consultative examiner concluded that plaintiff suffered from diabetes, but had a normal
24 sensory examination. [AR at 233.] On March 13, 2006, another nonexamining State Agency
25 physician noted that plaintiff has hypertension and diabetes mellitus with no evidence of end organ
26 damage. [AR at 239.]
27       Under the circumstances of this case, the ALJ was not required to obtain the testimony of
28 a medical expert. See Orellana v. Astrue, 2008 WL 398834, *11 (E.D. Cal. Feb.12, 2008) (noting

that "the ALJ generally is not obligated to have a medical expert testify at the administrative hearing unless the onset date cannot be ascertained or the expert is required to help develop the record with respect to a claimant's mental impairments"); see also 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii) ("[ALJs] may also ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) . . .") (emphasis added); see, e.g., Madis v. Massanari, 2001 WL 1485699, *1 (5th Cir. Nov. 5, 2001) ("Although an ALJ may ask for the opinion of a medical expert at a hearing, it is not mandatory."); cf. Armstrong v. Commissioner of Social Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998) (holding that where record was unclear as to determinative issue, ALJ "committed reversible error" by deciding issue without consulting a medical expert). The ALJ properly relied on the opinions of the consultative and nonexamining State Agency physicians in determining the severity of plaintiff's impairments and plaintiff's RFC.[5] See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and thus an ALJ "must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled."); see also Social Security Ruling[6] 96-6p ("Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated

---

[5] The ALJ summarized the opinions of these physicians [AR at 21-22], and gave "less weight" to the March 13, 2006, opinion of the nonexamining State Agency physician, as well as the opinions of the consultative internist, solely with respect to the findings that plaintiff has a medium exertional level. [AR at 23, 207-12, 229-34, 238-45.] The ALJ gave "greater weight" to the May 19, 2005, opinion of the nonexamining State Agency physician, who found that plaintiff retains the ability to perform light work, as it is more consistent with the record. [AR at 23, 144-52.] See Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review."). As the evidence relied on by the ALJ was neither inadequate or ambiguous, the ALJ did not have a duty to further develop the record, and thus his decision not to obtain the testimony of a medical expert is free from legal error. Remand is not warranted on this issue.

**B.    PLAINTIFF'S SUBJECTIVE SYMPTOMS AND CREDIBILITY**

Plaintiff contends that the ALJ did not properly evaluate plaintiff's subjective symptoms and credibility. Joint Stip. at 8.

Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is not credible and identify the evidence that undermines the claimant's complaints. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If

properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As neither party points to any evidence in the record of malingering by plaintiff, the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, the ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his subjective symptoms were "not entirely credible." [AR at 22.] The ALJ discounted plaintiff's subjective complaints of pain based on the medical evidence and plaintiff's inconsistent statements. [AR at 22-24.] As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's credibility, and finds that they are clear and convincing.

While it cannot provide the only basis to reject a claimant's credibility, the absence of objective medical evidence to support plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom testimony. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added); see also Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider). "Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced . . . The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed. 2d 974 (1986)).

Here, after considering the evidence of record, the ALJ concluded that "[plaintiff's] credibility is reduced by the lack of objective medical evidence to substantiate disability." [AR at 24.] The ALJ noted that plaintiff successfully recovered from his aortic valve replacement surgery; plaintiff's complaints of chest pain were not cardiac in origin; there are no complaints of foot pain in the record; there is no evidence that plaintiff's bilateral shoulder pain, back problems, or right hand and finger pain are disabling; plaintiff's syncope episode was not permanently disabling; and plaintiff's diabetes is controlled with medication and laboratory tests. [AR at 22-23.] The ALJ's findings are supported by the record. Discharge documents dated February 27, 2005, indicated that, subsequent to the aortic valve replacement surgery, plaintiff was fully ambulatory, with a restriction from heavy lifting; had a "good" prognosis; and would likely only be disabled for a period of three months. [AR at 355-56.] Further, Dr. Rubaum noted that plaintiff had an aortic valve replacement, and found that "[h]e has done well since [that] surgery." [AR at 145.] Indeed, plaintiff testified at the hearing that he believed the aortic valve replacement surgery was successful. [AR at 412.] Furthermore, while plaintiff was hospitalized due to a syncope episode on October 27, 2004, and alleged disability on that date, he was discharged on October 28, 2004, and was found able to return to work on November 4, 2004. [AR at 247-49.] In addition, an internal medicine examination from February, 2006, revealed that plaintiff's chest pain was not cardiac in origin given that it was mostly in the right side, was nonexertional, and lasted only a couple of hours. [AR at 233.] The examination also revealed no evidence of muscle spasm or tenderness and normal range of motion of the cervical and lumbar spines, negative straight-leg-raising test of the lumbar spine, limited range of motion of the shoulders, and only a slightly antalgic gait.[7] [AR at 231-33.] The examiner noted that radiographs of the right shoulder were within normal limits.[8] [AR at 233, 236.] The examiner diagnosed plaintiff with low back and

---

[7] The findings of the July 1, 2005, internal medicine examination with respect to the cervical and lumbar spines are the same as the 2006 findings. [AR at 207-12.]

[8] The Court notes that an MRI of the right shoulder in December, 2005, showed moderate acromioclavicular joint osteoarthritis. [AR at 384-85.] However, there is no indication that this finding was disabling, and given the subsequent radiographs showing normal findings [AR at 236], it does not appear that plaintiff is disabled based on his right shoulder problem.

bilateral shoulder strain. [AR at 233.] He concluded that plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours in an eight-hour day with normal breaks, sit for six hours in an eight-hour day, and can only occasionally reach in all directions above shoulder level bilaterally. [AR at 233.] Moreover, at the hearing, plaintiff testified that sometimes his feet hurt and he cannot wear shoes or socks [AR at 413-14], but plaintiff has pointed to nothing in the treatment record to indicate that he suffered from foot pain. [AR at 124-40, 154-206, 218-28, 247-396.] Finally, as discussed above, the consultative and nonexamining State Agency physicians' opinions suggest that plaintiff's diabetes was controlled with medication. [AR at 145, 229, 233, 239.] See discussion, supra, p. 7. Since, as set forth below, the ALJ has provided an additional reason for rejecting plaintiff's credibility that is clear and convincing, the absence of objective medical evidence is a legitimate basis to also reject his credibility.

In weighing plaintiff's credibility, the ALJ may also consider "inconsistencies either in his testimony or between his testimony and his conduct." See Light, 119 F.3d at 792; see also Smolen, 80 F.3d at 1283-84 (an ALJ can consider inconsistent statements made by a claimant in evaluating credibility). Here, the ALJ discredited plaintiff's allegations of disabling pain based on his inconsistent statements regarding the side effects of his medications. At the hearing, plaintiff testified that his pain medication makes him "sleep most of the time" and causes headaches, and that his nerve medication puts him to sleep. [AR at 412, 414.] Plaintiff further testified, however, that he did not talk to his doctor about the headaches caused by his medications. [AR at 414-15.] Notably, there is no indication in the treatment record that plaintiff suffered from side effects from his medications. Nor is there any indication that plaintiff complained of side effects, namely headaches or sleepiness, at the internal medicine examinations. [AR at 207-12, 229-34.] Indeed, the treatment notes reveal that plaintiff denied headaches. [AR at 352-53, 368.] Thus, the ALJ's conclusion that plaintiff's subjective symptoms were "not entirely credible" based on his inconsistent statements is entirely supported by the record and is proper.

"While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot affirm such a determination unless it is supported by specific findings and reasoning." Robbins

1  v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006).  Here, the ALJ provided
2  clear and convincing reasons for discounting plaintiff's subjective testimony.  His conclusion is
3  entitled to deference.  See Morgan v. Commissioner of the Social Security Administration, 169
4  F.3d 595, 599 (9th Cir. 1999) ("questions of credibility and resolutions of conflicts in the testimony
5  are functions solely of the Secretary"); see also Fair, 885 F.2d at 604 (where the ALJ "has made
6  specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings
7  are supported by substantial evidence in the record," reviewing courts must not engage in second
8  guessing); see, e.g., Fuller v. Astrue, 2008 WL 906447, *6 (D. Ariz. Mar. 31, 2008) (ALJ's
9  credibility determination is entitled to deference if her reasoning is supported by substantial
10 evidence in the record and is "'sufficiently specific to allow a reviewing court to conclude the
11 adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily
12 discredit a claimant's testimony.'") (citing Bunnell, 947 F.2d at 345).  Remand is not warranted
13 on this issue.

**VI.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: July 31, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE